53  329
73   73
    53  229
   109   53

    53  329
   123  137

## GILBERT ROWLEY v. WILLIAM C. TOWSLEY.

*Investment of ward's moneys—Repudiation of guardian's investment—Election of remedies—Subrogation—Estoppel—Reformation of deed.*

1. When a guardian, without an order of the probate court, invests the proceeds of his ward's property in lands, for their benefit, the cestuis que trustent, on reaching their majority, can repudiate the investment and hold him or his estate for the moneys invested, or they can follow the moneys into the lands purchased, and claim the lands as against any subsequent purchaser who had notice that they were purchased with trust-money. But they cannot do both, and the election of either remedy precludes the other.

2. A trustee who has wrongfully invested the moneys of his ward for the latter's benefit, and whose act in doing so has been repudiated by the ward, cannot, on satisfying his ward's claims against him for the money, be subrogated to the latter's equities and enforce the trust for his own benefit. Neither can his heirs do so on satisfying such a claim against his estate.

3. A ward who has repudiated an unauthorized investment of his moneys in land and has enforced his claim against his guardian for the money, cannot set up any legal or equitable claim to the land nor transfer title thereto. Nor can he ask to have the deed reformed, or empower any one else to do so.

4. Estoppel by an election between remedies extends beyond the immediate parties thereto, and binds all who claim under them or are in privity with them.

5. One who shows no rights under a deed has no equity to have it reformed.

Appeal from Ingham. (Gridley, J.) Feb. 6.—April 16.

BILL to reform a deed. Defendant appeals. Reversed.

*E. D. Lewis* and *Huntington & Henderson* for complainant.

*S. L. Kilbourne* and *Q. A. Smith* for defendant.

CHAMPLIN, J.   The bill in this cause is filed to reform a
deed made by Harvey and Desire Hodskiss to Mary E.
Murphy, dated May 24, 1866, conveying the northwest quar-
ter of the northwest quarter of section thirty-three, in the
township of Locke, Ingham county, Michigan, so as to convey
to MaryE. Murphy the land above described during her life,
with remainder over to Alice P. Puddy and Julia M. Puddy,
in fee, and to adjudge the complainant the owner of said
land in fee as the grantee of Alice P. and Julia M. Puddy,
and to compel defendant to release, surrender, and deliver
up the possession of the premises to complainant.   It will
be necessary, for a proper understanding of the case, to set
out quite fully the allegations of the bill upon which com-
plainant predicates his claim to equitable relief.

He states that he is one of the sons and heirs at law of
Levi Rowley, deceased, and owns property and real estate
liable for the payment of claims against the estate of Levi
Rowley, deceased, and being such heir, and liable for the pay-
ment of such claims, he, on the 12th day of October, 1881,
settled and paid a certain claim of Alice P. Puddy and Julia
M. Puddy against the said Levi Rowley, as their guardian,
for the sum of $508.82, being the amount found due to them
by the Hon. Geo. F. Gillam, judge of probate of Ingham
county, from the said Levi Rowley on account of money that
came to his hands as guardian of said Alice P. and Julia M.
Puddy, who are of the ages of twenty-eight and twenty-five
years, respectively; that they resided in the county of Ing-
ham until the spring of 1870, and then removed to Iowa,
where they have ever since resided; that their father, Elijah ·
Puddy, died in June, 1861, seized of 80 acres of land in sec-
tion 28, Ingham county, which descended to said Alice P. and
Julia M. Puddy, and their mother, Mary E. Puddy, widow
of said Elijah, as his only heirs at law; that at the time of

his death he was residing on this land as a homestead, and owned no other land; that Mrs. Puddy, in December, 1864, married one James S. Murphy; that in November, 1865, she petitioned the probate court of Ingham county to have Levi Rowley appointed guardian of Alice P. and Julia M., her minor children under the age of fourteen years, which was done on the 20th day of November, 1865; that the guardian immediately petitioned said court for a license to sell the above real estate, which was granted, and on the 28th day of March, 1866, the guardian sold the premises to William J. Rowley for $400, which sale was confirmed by the court, and a conveyance made accordingly; that the guardian, on the 24th of May, 1866, re-invested the proceeds of the sale of said real estate in other real estate, described as the northwest quarter of the northwest quarter of section thirty-three, in town four north, range two east, Michigan, the purchase being made from Harvey Hodskiss and Desire Hodskiss, and that the understanding between said guardian and Desire and Harvey Hodskiss and the grantee, Mary E. Murphy, the mother of said Alice P. and Julia M. Puddy, was "that the conveyance should be made, and was made, to said Mary E. Murphy during her life, with remainder over in fee to said Alice P. and Julia M. Puddy. And that said deed was delivered and accepted with the understanding, by all the parties above mentioned, that, as a matter of fact, it was so drawn that it conveyed but a life estate to said Mary E. Murphy, with remainder over in fee to said Alice P. and Julia M. Puddy; that it was well understood by the grantee, said Mary E. Murphy, that she was to take, and did take, only a life estate by said conveyance; and that her intention, as well as that of said guardian and said Desire and Harvey Hodskiss, was that the deed of conveyance should be so drawn as to convey to her only a life estate, with remainder over in fee to said Alice P. and Julia M. Puddy, and that they all supposed the fact to be at the time said deed was delivered and accepted that it was so drawn as to carry out that intention; that the purchase was made by said guardian with the money of his said wards, Alice P.

and Julia M. Puddy, and for their benefit, which facts were well known to said grantee; but that by the fraud or mistake of the conveyancer the names of said Alice P. and Julia M. Puddy, nor either of them, was mentioned in said deed of conveyance, but that the same was drawn according to the usual printed forms of full covenant warranty deed, with the word 'assigns' erased wherever the same occurs therein; that afterwards, on the fifth day of April, A. D. 1870, the said Mary E. Murphy, intending to convey only her life estate in and to said lands and premises to one William C. Towsley, signed, sealed, acknowledged and delivered a quitclaim deed of said premises, which deed was on the 18th day of April, A. D. 1870, duly recorded in the office of the register of deeds of said county, in Liber 47 of Deeds, on page 350; that the said Mary E. Murphy did not at that time suppose that she had any greater interest than a life estate in said land and premises, and did not attempt to convey any greater interest to said Towsley; and that the said William C. Towsley well understood that the said Mary E. Murphy did not claim any other or greater interest in and to said lands and premises than a life estate, as above mentioned; and that it was expressly understood and so stated to said Towsley, previous to and at the time of giving the quitclaim deed aforesaid, that she only sold her life interest therein; that that was all the interest she had, and all the interest she pretended to convey or he to purchase; that the said William C. Towsley gave the said Mary E. Murphy, for her life interest in said lands and premises, so deeded to him as aforesaid, an old team of horses, one of which was blind, an old single buggy, a silver watch, and $85 in money, the whole not exceeding in value the sum of $250, whereas said lands, at the time of the conveyance of the same to said Towsley, as aforesaid, were worth the sum of $800; that on the 16th day of December, A. D. 1875, the said Mary E. Murphy, the mother of Alice P. Puddy and Julia M. Puddy, died in the county of Marion and state of Iowa, where she had resided since the spring of A. D. 1870, and that the said Alice P. and Julia M. Puddy then and thereby

became and were in equity sole owners of said lands and premises, with the appurtenances, and were then entitled to the possession thereof, and that all the right, title and interest of said William C. Towsley therein then ceased and were extinguished at her death;" but, with intent to cheat and defraud the said Alice P. and Julia M., he has refused to deliver them possession or recognize them as the owners; that no suit was instituted by the said Alice P. and Julia M. Puddy, or by any other person or persons, to establish and enforce their rights in and to the said lands and premises so held by the said Towsley, or to recover the possession thereof, but that the said Alice P. and Julia M. Puddy instituted proceedings in the probate court for the said county of Ingham for the recovery of the money claimed to be due them from the said guardian, Levi Rowley, on account of the money received by him as their guardian; "that the claim was duly contested, and that [the] court determined and decreed that they were entitled to the sum of $508.82 on account of the property and money belonging to them, and received by their said guardian in his life-time; that the estate of Levi Rowley has been wholly divided up among the heirs of Levi Rowley a long time since; that in consideration that he is one of the heirs at law and liable with the others for the payment of said claim so allowed by said probate court as aforesaid, and for the further consideration that the said Alice P. and Julia M. Puddy should and did on said 12th day of October, A. D. 1881, convey to your orator all the right, title, claim and interest in and to said northwest quarter ($\frac{1}{4}$) of the northwest quarter ($\frac{1}{4}$) of section 33, in said town of Locke, by good and sufficient deed of conveyance, duly signed, sealed, acknowledged and delivered; that complainant did on said 12th day of October pay said claim of said Alice P. and Julia M. Puddy so allowed as aforesaid by the probate court, and receive said deed of conveyance.

Complainant therefore says that by the payment of said claim by him, and receiving said deed of conveyance from the said Alice P. Puddy and Julia M. Puddy as aforesaid,

he succeeded to all their legal and equitable rights and interests in and to said lands and premises, with the appurtenances, and that he is now the absolute equitable owner of the same; but that the said William C. Towsley, with intent to cheat, wrong and defraud complainant, still pretends and claims that he is the sole owner thereof, and entitled to the possession, and refuses to recognize any right, claim or interest of complainant therein; that the said Levi Rowley remained the guardian of said Alice P. and Julia M. Puddy up to the time of his death, which occurred in the spring of A. D. 1869, and that after his death no other guardian was appointed for them, and that no settlement of his account as their guardian was ever made by him in his life-time, or by any person for him since his death, until by the payment of the claim, allowed as aforesaid, by complainant on the 12th of October, 1881; that it was understood by the guardian that the wards were the owners in fee of said lands, subject only to the life estate of Mary E. Murphy, and that the same would be taken and accepted by them as payment in full for the money received by him as their guardian; and that so they would had they not been prevented from so doing by the wrongful acts of defendant; and complainant prays that the said deed from Desire Hodskiss and Harvey• Hodskiss to Mary E. Murphy, bearing date the 24th day of May, A. D. 1866, of said lands and premises, may be so reformed that the same shall convey said premises to the said Mary E. Murphy during her natural life, with remainder to said Alice P. Puddy and Julia M. Puddy, in fee, according to the intention of the parties as aforesaid; and that the said William C. Towsley may be decreed to surrender and deliver up the possession of said premises, with the appurtenances to complainant, his agent or attorney; and that complainant may have such other and further relief. in the premises as equity may require, and that the said William C. Towsley, his agent, attorneys and solicitors, may be restrained by an injunction, issuing out of this Court, from granting, bargaining, selling, disposing of or conveying said premises, or any part thereof, or incumbering the same by mortgage or otherwise.

There is no evidence whatever that the deed from Hodskiss to Mary E. Murphy failed to mention the names of Alice P. and Julia M. Puddy through the *fraud* of the conveyancer. It is claimed, however, that their names were omitted by mistake, and the mistake consisted in the conveyancer's view of the legal effect of erasing the word "assigns" from the ordinary form of a warranty deed. The deed was drawn by Levi Rowley, the guardian, and proof has been introduced to show what his intentions were in making the purchase, and in drafting the deed in the manner he did. The tendency of the testimony was to prove that Levi Rowley intended that the deed should be so drawn as to vest in Mary E. Murphy an estate for life, and upon her death it should descend to Alice P. and Julia M. Puddy, as her heirs at law, to the exclusion of any other heirs she might have at the time of her death; and that he believed that he accomplished this result when he drafted the deed upon an ordinary form of warranty deed and erased the word "assigns." At the time this deed was drawn Levi Rowley, had, under a license from the probate court, sold the real estate of his wards to his son, William Rowley, and it appears from the testimony that Mrs. Mary E. Murphy at the same time conveyed her dower interest in the land to William Rowley; the whole consideration paid by William, over and above some mortgage incumbrances, being four hundred dollars. As a part of this same transaction, relative to the purchase of the Hodskiss lands, a contract for the support of the minor children was entered into between Mrs. Murphy and her husband and the guardian, as follows:

"Know all men by these presents, that we, James L. Murphy and Mary E. Murphy, Locke, Ingham county, Michigan, do covenant and agree with Levi Rowley, guardian of Alice P. Puddy and Julia M. Puddy, minors, for and in consideration of having a certain piece or parcel of land known as the northwest ¼ of the northwest ¼ of section 33, in town four north, of range two east, in the state of Michigan, conveying to the said Mary E. Murphy and her heirs, she being the mother of said minors,—the said minors having an interest in the hands of the said guardian of $344.80, being a part of

the money paid for the above-described premises by the
guardian of the said minors for their benefit,—that we, the
said James L. Murphy and Mary E. Murphy will provide
for, support, care for and educate the said Alice P. Puddy
and Julia M. Puddy, minors, until they shall each arrive at
the age of 21 years, without any further charge to said minors,
or any other person, other than the consideration mentioned
in this agreement, the receipt whereof is hereby confessed
and acknowledged.    In witness whereof, we have hereunto
set our names and seals this twenty-eighth day of March, A.
D. 1866.

Mary E. Murphy.<br>
James L. Murphy.

And in the presence of George Dunckle and James Sulli-
van."

This is the only writing introduced in evidence which was
executed at or about the time having a tendency to throw any
light upon the transaction.    This was shown to be in the hand-
writing of Levi Rowley, and refers to the deed in question
as conveying the premises in dispute to Mary E. Murphy and
her heirs, and there appears to be no doubt but that the deed
is drawn just as he intended to have it drawn.    If a mistake
occurred at all it was a mistake of law in supposing that a
deed thus worded would convey only a life estate to Mrs.
Murphy instead of a fee-simple.    There is respectable author-
ity for holding that, under certain circumstances, courts of
equity have jurisdiction to reform a deed or other written
instrument where the mistake was one of law; but under
the facts of this case it becomes unnecessary to pass upon
that question, as there exist insurmountable difficulties in
the way of granting any relief whatever to complainant.

There was considerable testimony introduced for the pur-
pose of showing the value of the land at the time defendant
purchased, as tending to prove that he only could have
intended to purchase the life estate of Mrs. Murphy, measur-
ing such interest by the consideration paid.    Hodskiss pur-
chased the land in 1860, paying therefor four hundred dollars.
In 1866 he sold it to Mrs. Murphy for five hundred and fifty
dollars.    Mr. Dunckle, the agent of Mr. Hodskiss, through
whom this land was sold to Mrs. Murphy, says that both he

and Mr. Hodskiss considered the land well sold for $550; and at the time Towsley bought it he did not think there was very much rise in the value and that $600 would be an outside figure. Defendant Towsley paid what was agreed upon between the parties as $400, and he says that he thought he was paying all it was worth. The land is described as being upon a highway but little traveled; the surface uneven, and broken with pond holes, part of it lying quite low; about six acres had been partly improved, but not wholly cleared from logs and stones, and had never been plowed; the balance of the land had been run over and the salable timber taken off; two-thirds of the south half was what the witness styled "black ash swales," low land and watery; there was an old log-house upon it, with scarcely any upper or lower floor; " it was a pretty bad wreck." After Towsley purchased he went on and improved the place, so that at the time the testimony was taken he had twenty-eight acres cleared and " all under the plow;" he had set out an orchard of 55 apple trees, and dug 120 rods of ditch; built a barn and small addition to the house, and built fences, etc. We are satisfied from the testimony that there had been no very material improvements made on the place between the time Mrs. Murphy purchased and the sale to defendant. Neither Mr. nor Mrs. Murphy owned a team or farming utensils. The testimony bearing on the subject indicates quite clearly that the defendant supposed he was purchasing the title in fee-simple to the premises, and his subsequent actions have been quite consistent with that intent.

At the time of the sale to defendant no claim whatever was made that there was a mistake in the terms of the deed. The only questions were whether by its terms it conveyed to her a title in fee-simple, and whether she could convey such title to a purchaser. Upon these questions the defendant sought advice, and was informed that the erasure in the deed of the word "assigns" did not limit the quantity of the estate conveyed to less than a fee, nor limit or restrict her power of alienation; and Mrs. Murphy received the same information before she executed the deed to defendant. Mrs. Murphy

appears to have been quite anxious to effect a sale for the purpose of removing to Iowa, and may have been quite willing to accept an offer at less than what the premises were really worth to enable her to do so. We are not prepared to say that there was such a discrepancy between the actual value and the purchase price paid by defendant as to furnish evidence tending in any very considerable degree to prove that he knew that he was purchasing only a life estate instead of the fee of the land. The decided weight of the evidence proves quite the contrary. However that may be it becomes quite immaterial under the view we take of this case.

The foundation of the complainant's claim to equitable relief, as stated by himself is as follows : " Your orator, therefore says that by the payment of said claim by him, and receiving said deed of conveyance from the said Alice P. Puddy and Julia M. Puddy as aforesaid, he succeeded to all their legal and equitable rights and interests in said lands and premises, with the appurtenances, and that he is now the absolute equitable owner of the same." If this claim is found to be fallacious, it will be useless to inquire whether there was a mistake in drafting the deed, which would authorize a court of equity to reform it; or whether or not defendant was an innocent purchaser. Did the fact that complainant paid the claim established in the probate court against the estate of Levi Rowley by Alice P. and Julia M. Puddy confer upon complainant any equity to compel a reformation of the deed from Harvey and Desire Hodskiss to Mary E. Murphy, in the manner prayed for in the bill of complaint and as decreed in the court below ? The validity of the claim established in the probate court is not questioned by complainant; indeed, it is made the basis of his rights. That claim could only have been established upon the theory that Levi Rowley as guardian for the claimants, had wrongfully invested their funds in the purchase of the lands from Hodskiss. These were trust funds in his hands and when he purchased real estate therewith, without an order of the court, the *cestuis que trustent* had the right on arriving at majority, to follow the funds into the land and hold it, as against any one having

notice of the fact that it was purchased with trust money; or to repudiate the act of the guardian and hold him, or in case of his death, then his estate, liable for the moneys come to his hands. But they could not do both. They could not follow and reclaim the land, and hold their guardian responsible for the money invested in the land at the same time. The two positions are contradictory and so inconsistent that the assertion of the one involves the repudiation of the other. *Thompson v. Howard* 31 Mich. 312. They elected to proceed against the estate of their guardian to recover the funds, treating them as still in his hands. Their choice, as the testimony shows, was made deliberately and with the aid of eminent counsel. It seems that as soon as their claim was allowed in the probate court against the estate of Levi Rowley, the complainant voluntarily paid the whole amount.

The fact however, of the payment of this claim by the heir creates no equity in his behalf, either against the land in question or in the deed by which it was conveyed from Hodskiss to Mrs. Murphy. The claim was a debt or obligation against the guardian, Levi Rowley, and was a charge against his estate in the hands of the distributees. Levi Rowley in his life-time would have had no defense against this claim of his wards; much less could he have compelled a reformation of the deed so as to vest the fee-simple in his wards after they had repudiated his purchase. There is no principle of equity which recognizes the right of a trustee whose wrongful act in investing moneys has been repudiated by the cestuis que trustent, to be subrogated to their equities, and to enforce the trust for his own benefit to the same extent they could have done had they not repudiated the wrongful act. A tort-feasor cannot make his own wrongful act the basis of an equity in his favor. To do so would be like reversing the current of a stream, causing it to flow to instead of from its source. Complainant did not acquire any equity by paying the debt due from Levi Rowley to Alice P. and Julia M. Puddy, to relieve his land from the lien created by such indebtedness. And were it possible to transfer the lien from his lands to the land of defendant on the ground that defendant was a purchaser

with knowledge of the misapplication of the funds, it could only be done to the extent of the lien upon his own lands, which he was required to pay. It would be a perversion of justice to divest the defendant of his land, valued by complainant's own witnesses at from twelve to sixteen hundred dollars, and transfer it to complainant in satisfaction of his lien without opportunity for redemption, and it can only be justified on the theory that the complainant is entitled to a reward or premium for the breach of trust of his ancestor.

Equally barren of equity is the other ground alleged by complainant as entitling him to relief. Complainant acquired no title whatever, legal or equitable, by virtue of the deed from Alice P. and Julia M. Puddy, for the reason that they had no legal or equitable title to convey. They had repudiated the investment of their funds in the land, and had elected to hold their guardian responsible for their money. The estoppel of an election extends beyond the immediate parties, and binds all who claim under or who are connected with them as privies. *Merrick's Estate* 5 W. & S. 9. They having repudiated the deed from Hodskiss to Mary E. Murphy, could claim no right to have it reformed, and consequently could confer no such right upon the complainant. " Unless complainant shows that he holds under the deed sought to be reformed, he makes no showing of equities." *Ballentine v. Clark* 38 Mich. 395.

The decree of the circuit court must be reversed and a decree entered here dismissing the bill of complaint, with costs to defendant, of both courts.

The other Justices concurred.