GILLAM *v.* BARNES.

123    119
s124    686
123    119
s82NW    38

1. MORTGAGES — TRUSTS — BENEFICIARIES — ACCEPTANCE — DECREE ON FORECLOSURE.

A trust mortgage given to secure the mortgagor's release from liability as indorser upon his son's notes, and the substitution of the notes of the son unindorsed, may become operative at once as to an insolvent beneficiary ( a bank ) in the hands of a receiver, where such is the clear intention of the parties, although the bank has negotiated the indorsed notes, and, because of its insolvency, is unable immediately to pay them in full and obtain their surrender by the holder; but the decree on foreclosure of the mortgage should provide for an appropriation of the moneys received thereunder to the payment of such notes, and for their subsequent surrender to the mortgagor.

2. SAME—PRIORITIES.

A trust mortgage, in terms subject to an earlier mortgage, will not be given priority merely because the beneficiaries in the earlier mortgage, to whom the mortgagor was actually indebted for a valid, subsisting debt as indorser on his son's notes, delayed, until after the second mortgage was executed, to signify their acceptance of conditions requiring them to surrender the indorsed notes, and receive in lieu thereof the son's notes unindorsed.  *Ladue* v. *Railroad Co.,* 13 Mich. 393, distinguished.

3. SAME — EVIDENCE OF CLAIM — PRODUCTION IN SUPREME COURT.

An objection, raised on appeal from a decree of foreclosure of a trust mortgage, that one of the beneficiaries is not entitled to participate because of his failure to produce the notes on which his claim is based, is obviated by the production and filing of the notes in the Supreme Court.

4. SAME — ASSIGNABLE INTEREST — FORM OF DECREE — PARTIES — APPEAL.

Where, in a suit to foreclose a trust mortgage, the mortgagor in his answer denies that any person is entitled to have a decree for a certain indebtedness described in the mortgage, and the creditor, who owned the indebtedness described, declined to accept the mortgage as security for his debt, the mortgagor cannot, on appeal, attack the decree for failure to

provide that one to whom the original beneficiary had attempted to assign his interest under the mortgage at the request of the mortgagor was entitled to the benefits thereof; the contemplated assignee not being a party to the record, and no one by his pleading having asserted such claim.

Appeal from Ingham; Person, J. Submitted February 8, 1900. Decided February 20, 1900.

Bill by George F. Gillam, as trustee, against Orlando M. Barnes and others, to foreclose a mortgage. From a decree for complainant, certain of the defendants appeal. Modified.

*George F. Gillam* (*Cahill & Wood*, of counsel), *in pro. per.*

*Russell C. Ostrander*, for appellant Orlando M. Barnes.

*V. H. & H. H. Smith*, for appellants First National Bank of Ionia *et al.*

*A. F. & F. M. Freeman*, for appellants People's Bank of Manchester *et al.*

*S. L. Kilbourne*, for appellant Orlando M. Barnes, in interest of First National Bank of Ann Arbor *et al.*

*Thomas A. Wilson* (*Thomas, Cummins & Nichols*, of counsel), for defendant receiver of Central Michigan Savings Bank.

*Charles F. Hammond*, for defendant Thomas Marshall.

*Barnes & Race* (on behalf of Jeptha H. Wade) and *Jay P. Lee* (on behalf of William H. and Beverly P. Davenport). *amici curiæ.*

MOORE, J. On the 23d of August, 1893, Orlando M. Barnes and his wife made to the complainant a mortgage for the sum of upwards of $107,000 upon a large number of pieces of real estate. This mortgage was given subject

to a mortgage dated June 13, 1893, given to Jeptha Wade.
The mortgage contained this language:

"Whereas, Orlando F. Barnes is indebted to divers
persons, banks, and firms in divers amounts, amount-
ing in aggregate to the sum of one hundred and
seven thousand three hundred and ten dollars and eight
cents ($107,310.08), upon which indebtedness Orlando M.
Barnes is liable as indorser or otherwise, which indebted-
ness is held by and is due to the following named persons
and corporations in the amount set opposite their names,
respectively, viz.:

| | |
|---|---:|
| The Central Michigan Savings Bank | $65,000 |
| Thomas Marshall, Lansing, Mich. | 4,000 |
| Arthur T. Davis, Lansing, Mich. | 2,500 |
| Ingham County Savings Bank | 30,810 |
| Lansing State Savings Bank | 5,000 |
| | $107,310 |

—And whereas, it has been deemed expedient to con-
solidate the said indebtedness, and the holders thereof
have consented to do so, provided the payment of the
same be secured by these presents: Now, therefore, these
presents are upon this express condition that the said
Orlando F. Barnes, or the said party of the first part
herein, shall and do well and truly pay or cause to be paid,
within five years from the date hereof, the sum of one
hundred and seven thousand three hundred and ten and
eight-hundredths dollars, with interest thereon at the rate
of six per cent. per annum, payable semi-annually, accord-
ing to a series of promissory notes, bearing even date
herewith, executed by the said Orlando F. Barnes to
George F. Gillam, trustee, or order, as collateral security;
then these presents and the said obligation shall cease
and be null and void."

It then provided for the foreclosure of the mortgage in
case of nonpayment of the debt. The mortgage also con-
tained the following provision:

"It is deemed expedient that any of said lands em-
braced in this mortgage be sold whenever a fair and satis-
factory price can be obtained therefor, before the end of
said time limited. It is therefore expressly agreed that,
whenever the parties of the first part can effect a sale of

such lands at a price and on terms satisfactory to both parties hereto, the said party of the second part shall release the lands so sold or contracted to be sold from this mortgage; the money arising from such sale, after paying the cost of making the same, and any liens that may be upon such lands prior to this mortgage, to be paid *pro rata* on the indebtedness hereby and herein secured."

On the 19th day of September, 1893, Mr. Barnes and his wife gave to the complainant, as trustee, a mortgage in the sum of $140,000, to secure a long list of other creditors than those named in the earlier mortgage. The mortgage contained the following language:

"Subject, however, to certain mortgages heretofore executed by said parties of the first part, as follows: (1) A mortgage to Jeptha H. Wade upon certain of the lands herein described, to secure the payment of one hundred thousand dollars, and bearing date the 13th day of June, A. D. 1893. (2) A mortgage given to George F. Gillam, trustee, upon the same lands as those described in the last-named mortgage, and others, to secure the payment of one hundred and seven thousand three hundred and ten dollars and eight cents ($107,310.08), bearing date the 23d day of August, A. D. 1893. (3) A mortgage to the People's Savings Bank of Lansing, Michigan, upon certain other of the lands herein described, and not covered by either of the above-described mortgages, situate at Mason, Ingham county, and on section nineteen (19), township thirty-nine (39) north, of range three (3) west, Michigan, to secure the payment of five thousand dollars ($5,000), bearing date September the 8th, 1893,—all of which mortgages are recorded in the register's office of Ingham county, and to which mortgages, or the record thereof, reference is herein made. And it is expressly understood and agreed that this indenture is subject to said several mortgages, to the extent that they cover the lands herein described, respectively."

In February, 1896, a foreclosure bill was filed for the purpose of foreclosing the mortgage given in September, 1893. In the bill of foreclosure it was stated that the mortgage sought to be foreclosed was subject, among others, to the mortgage of August 23, 1893. On the 26th of April, 1897, a decree was rendered in this cause direct-

ing a sale of the property as prayed in the complainant's bill of complaint. In the decree was the following statement:

"It appearing to the court that the mortgage herein referred to is a third mortgage upon certain of the property therein described, and a second mortgage as to certain other of said property, and it appearing to the court that, by reason of such prior incumbrances, it will not be practicable to sell the said property in parcels, it is therefore ordered and decreed that the said lands be sold entire as one parcel, subject to the said several mortgages as they may appear."

On the 19th of July, 1897, the property was sold under this decree by the circuit court commissioner to George F. Gillam, trustee for the beneficiaries named in the decree. All of the lands were sold as one parcel, for the sum of $605.

In June, 1896, this proceeding was commenced for the purpose of foreclosing the mortgage given on the 23d of August, 1893. In December, 1898, a decree was rendered in favor of the complainant. Among other provisions, the decree is as follows:

"It is further found and determined: That the following persons, firms, and corporations, who were holders of the notes and other obligations of Orlando F. Barnes so indorsed or otherwise guaranteed by Orlando M. Barnes, have accepted the obligations of Orlando F. Barnes and the security of said mortgage, viz.: The Ingham County Savings Bank for the sum of $30,810.08; Thomas Marshall, for the sum of $4,000. That the indebtedness, as a whole, due to the Central Michigan Savings Bank, and intended in part to be secured by said mortgage, consisted in part of six certain promissory notes, for $5,000 each, made by Orlando F. Barnes and indorsed by Orlando M. Barnes, dated and payable as follows: A note dated March 31, 1893, payable four months after date; a note dated January 26, 1893, payable three months after date; a note dated March 31, 1893, payable four months after date; a note dated January 26, 1893, payable three months after date; a note dated January 26, 1893, payable three months after date; a note dated March 31, 1893, payable

four months after date,—which said several notes, when made, were delivered to and became the property of the Central Michigan Savings Bank, and formed a part of the entire indebtedness intended to be secured in part to this bank by said mortgage. That, after the making and delivery of said notes to the Central Michigan Savings Bank, the said Central Michigan Savings Bank guaranteed the payment thereof, and discounted or transferred the same, and, at the time of the execution and delivery of the mortgage to complainant, said notes were held by the following persons, firms, and corporations, viz.: The one first above mentioned was then held by John N. Berry, of Grand Ledge, Michigan; the second and sixth above mentioned, by the Citizens' Bank of Saline, Michigan; the third, by one Reuben Kempf; the fourth and fifth, by the Mechanics' Bank of Detroit, Michigan. That, at the time of the execution of said mortgage, the receiver of the Central Michigan Savings Bank, by leave of the court, accepted the security of said mortgage, and surrendered to said Orlando M. Barnes so much and such parts of the entire indebtedness due to said Central Michigan Savings Bank as was evidenced by paper then in his hands or under his control. That said receiver has, since the execution of said mortgage, paid upon the notes not surrendered dividends amounting to fifty-five per cent., and the estate in his hands is liable for the balance *pro rata* with other creditors of said bank.

"And it is further found and determined that the following persons and corporations refused to accept the notes of Orlando F. Barnes and the security of said mortgage, viz.: Arthur T. Davis, in the sum of $2,500; the Lansing State Savings Bank, in the sum of $5,000,—and that neither Arthur T. Davis nor the Lansing State Savings Bank is entitled to participate in the security so offered. It is further adjudged and determined that neither the People's Savings Bank of Lansing nor the First National Bank of Ann Arbor acquired any right to participate in such security by reason of any transfer, legal or equitable, of the five thousand dollars interest in said mortgage originally intended for the benefit of the Lansing State Savings Bank.

"It is further found and determined that, since the execution of said mortgage, the Ingham County Savings Bank has assigned to Jeptha H. Wade, of Cleveland, Ohio, an interest in its security under said mortgage equal

to the sum of $18,400, and that the said Jeptha H. Wade is lawfully entitled to participate in said security to the extent of said interest so assigned to him, viz., to the extent of $18,400, together with interest thereon as hereinafter shown.

"It is further found and determined that the said Ingham County Savings Bank, on, to wit, the 7th day of August, 1897, became the purchaser from Orlando M. Barnes and wife of lands situate in the city of Lansing, county of Ingham, State of Michigan, which were covered by and included in said mortgage; * * * that said purchase of said lands was made upon the agreement that the amount of said purchase price should be received and credited by the said Ingham County Savings Bank at the sum of $12,650, that being the balance claimed to be due to the said Ingham County Savings Bank on account of such securities after the assignment of its interest to Jeptha H. Wade, as hereinbefore stated,—the said lands to be released from said mortgage given by the said Orlando M. Barnes to complainant as set forth in said bill, and also to be released from a certain other mortgage executed by Orlando M. Barnes and wife to George F. Gillam, trustee for certain other creditors of Orlando F. Barnes, which said mortgage bore date the 19th day of September, 1893, and was recorded in the office of the register of deeds of Ingham county, Michigan, on the 21st day of September, 1893, in Liber 87 of Mortgages, on pages 109 to 115, both inclusive. And it is further found and determined that the said purchase of said land by the said Ingham County Savings Bank was agreed to and approved by George F. Gillam, trustee named in both mortgages, and a release of said lots from said mortgages executed by the said George F. Gillam to the said Ingham County Savings Bank in accordance with such agreement. It is further found and determined by the court that the sale of said lands to the said Ingham County Savings Bank for the said sum of $12,650 was made in good faith for a reasonable sum, that the same was for the advantage of all persons interested in said mortgage, and that the said sale stand confirmed as of the date at which the same was made, and upon the terms hereinbefore stated; and that the said Ingham County Savings Bank have and hold said lands freed of said mortgages, in full payment and discharge of all claims under said mortgage, and that its title thereto be, and the same is hereby, quieted and confirmed. * * *

"It is further ordered, adjudged, and decreed that the full amount of said mortgage, both principal and interest unpaid, is now due; that there is now due to the said Central Michigan Savings Bank for principal and interest computed to the 29th day of August,. 1898, the full sum of $59,854.15; that there is due to Jeptha H. Wade the sum of $21,823.64; that there is now due to Thomas Marshall the sum of $4,820.83,—together with the interest to be computed thereon since the 29th day of August, 1898, at six per cent. per annum."

. From this decree the beneficiaries under the mortgage of September, 1893, have appealed. They claim that the Central Michigan Savings Bank is entitled to a decree of less than $2,000. They urge that no decree should have been rendered in favor of Jeptha Wade, and insist that Mr. Marshall was not entitled to a decree. The court had the benefit of able oral arguments, lasting something more than a day, and has very voluminous briefs furnished by counsel. It does not deem it necessary to enter into an extended discussion of the various interesting questions raised by counsel, but will content itself with a simple statement of the conclusions reached by it.

A careful perusal of the record dispels many of the seeming difficulties suggested by the briefs and oral arguments of counsel. It discloses that prior to June, 1893, Orlando M. Barnes had no personal creditors. His son Orlando F. Barnes was engaged in very large business enterprises. His debts and the debts of the Lansing Lumber Company and the Lansing Iron & Engine Works, in which he was the principal stockholder, to the Central Michigan Savings Bank alone, amounted to about $240,-000. Mr. Orlando M. Barnes had placed with the bank collateral securities for some of this amount, and was liable as indorser for a large amount. He desired to aid his son, and to secure his release from personal liability. To accomplish this purpose he made the two mortgages already mentioned herein; having in June prior thereto made a mortgage to Jeptha Wade, of Cleveland, Ohio, to which the later mortgages were subject. The Central Michigan

Savings Bank was itself in trouble, and was in the hands of a receiver: Mr. Barnes turned out to the receiver certain bonds, and an interest in a mortgage, in extinguishment of the debts due from the Lansing Lumber Company and the Lansing Iron & Engine Works. After this was done, Mr. Orlando F. Barnes still owed the bank upwards of $130,000. According to the testimony of the receiver, the name of Mr. Barnes was on about $80,000 of this indebtedness, and a further amount was in the possession of the bank, secured by collaterals, which were surrendered when the mortgage was given. At the time the mortgage was given, other securities were turned over to the receiver, so as to reduce the amount of the indebtedness, for which Mr. Orlando M. Barnes was willing to give mortgage security, to $65,000. Other collaterals were in the possession of the bank, which were afterwards realized upon, which ultimately reduced the amount to $45,500. It is for this last-named amount, with interest, that the decree is given.

The beneficiaries under the September mortgage say that the mortgage was to become operative only upon the condition that the indebtedness for which Orlando M. Barnes was liable was to be extinguished, and the paper having his indorsement returned to him; that the consideration named in the mortgage included six notes, of $5,000 each, which the bank at that time had discounted, which have never been canceled and returned to Mr. Barnes; and that the decree ought not to include the amount of these notes. It is also claimed that a like condition exists as to a $5,000 note known as the "Iron & Engine Works Note." As to the last-named note the testimony is conflicting, but we think it was not included in the debt secured by the mortgage. Objection is made to other items embraced in the decree, but we do not deem the objections of sufficient importance to refer to them any further. The record discloses that Mr. Barnes and the receiver of the bank, Mr. Stone, both knew at the time the mortgage was made that these notes could not

then be surrendered to Mr. Barnes, and it was not expected by either of them that they would be surrendered before the mortgage should become operative. The receiver has three of the notes in court now, and is ready to surrender them to the estate of Mr. Barnes. It was known to both Mr. Barnes and the receiver that it would be necessary to convert the assets of the bank before its debts could be paid. They both anticipated that the proceeds of the debt secured by the mortgage might be required to enable Mr. Stone to retire these notes. The mortgage itself provides for a sale of the property at private sale, the proceeds to be used to pay the debts secured by the mortgage *pro rata*. The bank could not procure these notes without having the funds to do so. The giving of the mortgage was expected to result ultimately in its having funds. Mr. Barnes and the receiver both expected the bank would be able to pay 100 cents on the dollar. The receiver delivered to Mr. Barnes all of the notes then in his hands upon which Mr. Barnes was liable, and agreed with him that he would surrender the others when he could get them. This was entirely satisfactory to Mr. Barnes. The note of Mr. Orlando F. Barnes for $65,000 was delivered to and accepted by the bank. The mortgage was delivered to the trustee and put upon record. The receiver has already paid 55 cents on the dollar of these notes. The mortgage itself does not require a surrender of the notes upon which Orlando M. Barnes was liable before it should become operative.

It is also urged ( and the same argument is used in relation to the claims of Mr. Marshall and of the Ingham County Savings Bank ) that:

"This mortgage was given to secure the notes of Orlando F. Barnes, and until those notes were accepted, so that they constituted a binding contract between Orlando F. Barnes and the beneficiaries under the mortgage, neither the land nor the parties nor third persons were bound by this mortgage. Until such time it was but an arrangement contemplated, but not perfected, and could only be made effectual by the future act of the benefi-

ciary,—not binding, nor intended to bind, until the beneficiary had acted.   Such is the language of the bill of complaint, in substance, and such is the evidence, which has already been referred to.   It would seem that it must follow that when the beneficiaries under the mortgage being foreclosed did accept, when any one of them had given up the old notes with O. M. Barnes' name thereon, and accepted the notes of Orlando F. Barnes and the mortgage security, their lien upon the land dated from that time, and they took their security as they found it, subject to the rights that may have intervened between the making of the mortgage that is now being foreclosed and their acceptance of same.   In other words, they stand just the same as though the mortgage had been made and delivered to them on the day they accepted.   It being optional with the beneficiaries whether they would accept or not, if other rights or other liens intervened before their acceptance and after the making of the mortgage, the mortgage is, as to such beneficiaries, in legal effect, subsequent to liens acquired or rights which have sprung up after the making of the mortgage and before the acceptance thereof by the beneficiaries.   See *Ladue* v. *Railroad Co.*, 13 Mich. 393, 394 (87 Am. Dec. 759)."

If the conclusion reached by the counsel is the correct one, if the last mortgage was made but a day later than the prior one, and if the beneficiaries therein named had given notice of their acceptance of its terms the same day it was made, their claims would have priority over the claims of the beneficiaries named in the prior mortgage, even though they accepted its terms, if their acceptance was made later than the acceptance of the beneficiaries in the later mortgage; and this, too, when the later mortgage was by its terms made subject to the conditions of the prior mortgage.   It does not occur to us that this would be equitable, and it would certainly defeat the intention of Mr. Barnes in making the mortgages.   We do not think the case of *Ladue* v. *Railroad Co., supra*, sustains this contention.   The mortgage in that case was made to secure Ladue and Eldred, and to indemnify them, for any indorsements they might make for the mortgagor, and for any advances they might make him.   Ladue and

Eldred were not bound to make any advances or indorsements or to incur any liability for Ladue, nor was the latter bound to accept any accommodation. The deed was not made subject to this mortgage. The liability for which the mortgage was sought to be foreclosed was incurred after Mr. Howard obtained his deed and put it upon record. It appears in the opinion of Justice CHRISTIANCY:

"It does not satisfactorily appear by the evidence that any of these indorsements, made since the recording of Howard's deed, were made in renewal of paper indorsed by them previous to that time. * * * It does not appear that at the time of the sale to Howard, or the recording of his deed, there was any existing, unsatisfied indorsement, or any subsisting liability, inchoate or otherwise, incurred by the mortgagees for the mortgagor. * * *"

In speaking of the claim of the defendants, this language is used in the opinion:

"Nor is it denied that if the mortgagees, by the contracts or arrangements between them and the mortgagor (to secure which, on the part of the latter, was the object of the mortgage), had been bound to make advances or to indorse for the mortgagor, the record of the mortgage would have been full notice to Howard, and the mortgage would have been good against him, though the advances were not in fact made or the paper indorsed until after the deed to him, and actual notice of that deed to the mortgagees. The defendants also admit that the result would be the same, under this mortgage, as to any advances made or paper indorsed by the mortgagees for the mortgagor before they had actual or constructive notice of the sale and deed to Howard. But they insist that as there was not, at the time of Howard's purchase or the recording of his deed, any debt of the mortgagor, or any liability incurred for him by the mortgagees, absolute or inchoate, nor any obligation on their part to incur such liability, the mortgage was not then an incumbrance in fact or in legal effect; that it could only become such from the time when the advances or indorsements were actually made; and it being optional with the mortgagees whether they would make any such advances or indorsements, and the

indorsements being made subsequent to the recording of Howard's deed, the mortgage is, in legal effect, subsequent to the deed, and the record of the deed was notice to the mortgagees of Howard's rights."

The learned justice discusses in detail the functions of a mortgage, and, among other things, says:

"A mortgage, then, being a mere security for the debt or liability secured by it, it necessarily results that the debt or liability secured is the principal, and the mortgage but an incident or accessory.   *   *   * These propositions being established, the necessary result is that the mortgage instrument, without any debt, liability, or obligation secured by it, can have no present legal effect as a mortgage or an incumbrance upon the land.   It is but a shadow without a substance, an incident without a principal; and it can make no difference in the result whether there has once been a debt or liability which has been satisfied, or whether the debt or liability to be secured has not yet been created, and it requires, as in this case, some future agreement of the parties to give it existence.   At most, the difference is only between the nonentity which follows annihilation and that which precedes existence."

What is the situation in the case at bar?   When this mortgage was given, Orlando F. Barnes owed the Central Michigan Savings Bank, Mr. Marshall, and the Ingham County Savings Bank certain sums of money, which were then due.   Upon these debts Orlando M. Barnes was liable as indorser or otherwise.   To secure the payment of them within five years from date of the mortgage, this mortgage was given.   It described the debts and the amount thereof.   It was given to secure the payment of valid, subsisting debts.   The amount named in the mortgage was a definite amount, payable at a definite time; so the subsequent mortgagees were advised fully of the conditions.   It is true, the old notes were to be surrendered, and the notes of Orlando F. Barnes to be substituted therefor; but the fact remains that the mortgage was given to secure the ultimate extinction of the prior debts, for which both Orlando F. Barnes and Orlando M. Barnes were liable.   Judging from what we have quoted from the

opinion of Justice CHRISTIANCY, can there be any doubt about what he would hold in such a case as this? The later mortgage was given subject to the conditions of this mortgage. When the later mortgage was foreclosed, the bill of foreclosure recited that it was given subject to the conditions of the prior mortgages. The decree of foreclosure recited the same thing, in substance, and for that reason authorized the sale of a great many descriptions of land as one parcel. The sale was made, and the land was bid in for the beneficiaries named in the later mortgage for a merely nominal sum. Under such circumstances, we do not think a case can be found which holds that the beneficiaries under the prior mortgage, who accepted its terms at any time when they had a right to do so, must be held to be subsequent mortgagees to the beneficiaries named in the later mortgage. See *Gow* v. *Lumber Co.*, 109 Mich. 45 (66 N. W. 676), and the many cases there cited.

It is urged the decree, as to Mr. Wade, is wrong for the following reasons:

"1. That the Ingham County Bank had no valid lien under the first Gillam mortgage until after the First National Bank of Ionia had accepted under the second Gillam mortgage, and hence that the Ionia bank's lien must be superior to the lien acquired by the Ingham County Bank.

"2. That the transaction by which the mortgage was assigned to Mr. Wade amounted to a payment by Mr. O. M. Barnes, and Mr. Wade has no interest.

"3. That there is an error of at least $3,000, anyway, in the decree in his favor.

"4. That the notes are not produced or accounted for, so there can be no decree for Mr. Wade."

Taking the testimony as an entirety, we think none of these reasons can be sustained. It is true that the Ingham County Savings Bank did not receive the new notes and surrender the old ones until the latter part of September, but it is equally clear that the arrangement that it should do so was made at the time the mortgage was

made. Nor do we doubt, from the testimony, that the beneficiaries named in the September mortgage knew when they accepted its terms that the Ingham County Savings Bank intended to avail itself of the conditions of the August mortgage.

As to the claim that Mr. Wade had no interest in the mortgage as the result of the assignment made by the bank to him: While there was some confusion in the testimony of Mr. May when he was first upon the stand, before he had consulted his books and the correspondence, the testimony shows beyond any reasonable question that the money was furnished by Mr. Wade, and that it was so furnished in exchange for the interest in the mortgage which was assigned to him.

As to the claim that there was an error of at least $3,000 in the amount decreed to Mr. Wade: This claim is based upon the testimony of Mr. May, counsel insisting that his testimony shows that, when the land was turned out to the bank at the agreed price of $12,650, it left but $15,634. Counsel seem to have overlooked the statement of Mr. May that this was exclusive of interest. If the interest is accurately computed, it will be shown that, instead of the amount of the decree being too large, it is not quite as large as the amount actually due.

As to the claim that the notes were not produced or accounted for in the court below, and therefore must be deemed to have been paid: We do not think that it can be said they were not accounted for, or that the presumption of payment was not overcome, though they were not produced. This may have grown out of the fact that the record does not indicate very clearly that any serious contest was made as to this claim in the court below. Indeed, the trustee (who stands neutral), when he filed his brief in this court, did not suppose that any contest would be made over this claim. The solicitors for Mr. Wade, to avoid any controversy, have brought the notes into court, and left them with the clerk to be filed. Having done this, we think every reasonable objection to the

decree in favor of Mr. Wade disappears. *Young* v. *Mc-Kee*, 13 Mich. 552.

From the finding of the decree that the Lansing State Savings Bank refused to accept the security of the mortgage, and therefore should not share in the proceeds thereof, Mr. Barnes, for himself and the First National Bank of Ann 'Arbor, seeks to appeal. After the mortgage of August 23, 1893, was made, the Lansing State Savings Bank declined to accept it as security and surrender the debt which it had. Mr. Barnes arranged to pay the debt in another way, and did so. Subsequently, at the request of Mr. Barnes, the Lansing State Savings Bank made a formal assignment of its interest in the mortgage, which the cashier says "was simply a transfer to other parties of the interest our bank held in the mortgage, whom he [ Mr. Orlando M. Barnes ] desired to pay." The assignment was made to Mr. Prudden, and it was expected that he would turn over the mortgage interest to the Ann Arbor Bank. He did not do so, but used it in another way, not material to state here. Mr. Barnes claims that the interest so assigned should inure to the benefit of the Ann Arbor Bank. His counsel claims that, when Mr. Barnes paid the debt of the Lansing State Savings Bank, he became subrogated to its rights in the mortgage, and that when that bank, at his request, transferred its interest in the mortgage to Mr. Prudden to enable him to transfer it to the Ann Arbor Bank, Mr. Barnes and the bank were entitled to have the interest secured to the Lansing State Savings Bank applied to the benefit of the Ann Arbor Bank. Speaking for myself, I think it very clear that the Lansing State Savings Bank never obtained any interest in the mortgage of August 23d to transfer. The simple making of the mortgage did not give the creditor named therein any interest in the mortgage. It was not until the creditor indicated a willingness to accept the provisions of the mortgage that he acquired any interest therein. The Lansing State Savings Bank declined to surrender the debt it held when the mortgage was made,

and refused to accept the provisions made for it in the mortgage. Having, then, no interest in the mortgage, because it did not accept its terms, it is clear that it could convey no interest to others. There are other difficulties in the way of enforcing the claim of Mr. Barnes. The First National Bank of Ann Arbor is not a party to the record. The bill of complaint refers to the debt of the Lansing State Savings Bank, and to its assignment to Mr. Prudden and its subsequent assignment by him. In his answer Mr. Barnes gives in detail his understanding of the *status* of the claim, and says:

"This defendant therefore denies the right of the complainant to include in his claim in this suit the five-thousand-dollar note, and denies the right of any one to have judgment or decree for the same."

No different claim has been made in the pleadings by Mr. Barnes, or by any one else acting for him or for the Ann Arbor Bank. While all the justices may not agree for the same reason upon the conclusion we have reached, we are all agreed that in relation to this claim the decree must be affirmed.

It is insisted that a decree ought not to have been made in favor of Mr. Marshall, or, at least, if made in his favor, that his claim should be subsequent to the claim of the beneficiaries named in the last mortgage. Counsel, in their brief, say:

"We are inclined to concede that, were there no intervening equities, acceptance might take place at any time during foreclosure, upon hearing, and down to the time of decree."

Mr. Marshall and his counsel seem to have labored under the impression that, because of the language used in the mortgage, it was not necessary for him to indicate his acceptance of its provisions. However, on the hearing, and before the decree, he brought the notes indorsed by Orlando M. Barnes into court, and surrendered them, and asked to be allowed to be one of the beneficiaries of the mortgage. The discussion of one of the objections made to the decree in favor of the Central Michigan Savings

Bank makes it unnecessary to discuss this phase of the case further. No injustice is done the beneficiaries of the later mortgage in allowing Mr. Marshall the amount due him.

Orlando M. Barnes has appealed from the decree. He does not object to the amount of the decree, but he says it was the agreement, when the mortgage was made, not only that the receiver should deliver to him all the notes then in his hands upon which Mr. Barnes is liable, but that the six notes of $5,000 each should be delivered to him. His claim, stated in the language of his counsel, is:

"It was the duty of Mr. Stone to take up these notes and deliver them to Mr. Barnes. He does not, however, insist that such taking up and delivery should precede the foreclosure of the mortgage, that being left to the discretion of the receiver; but he does strenuously insist that, before the money realized from the foreclosure is distributed in dividends to the depositors of the bank, so much of that fund as is necessary should be appropriated by the receiver to the payment or procuring of the six notes, and their delivery to Mr. Barnes."

The record discloses, beyond any reasonable question, that one of the leading reasons which influenced Mr. Barnes to make this mortgage was his desire to be relieved of personal liability, and to have the notes upon which he was liable delivered to him, and that it was agreed that this should be done when the mortgage was made. As we have already shown, the return of the notes to him was not made a condition precedent to the mortgage taking effect, but it was part of the agreement that they should be taken care of by the receiver and returned to Mr. Barnes. As already stated, the receiver delivered to him all the notes he then held in his possession. In addition to delivering to Mr. Barnes the notes in pursuance of the agreement made in August, he gave to him the following memorandum:

"LANSING, MICH., Sept. 21st, 1893.
"I have this day delivered a part of the notes of O. M. Barnes, as per agreement, in settlement, and will deliver the balance as soon as I can get them into my possession.
"GEORGE W. STONE, Receiver."

The testimony discloses that this memorandum refers to the six notes in question. It is urged by the counsel for the Central Michigan Savings Bank that the real consideration was not the delivery of the notes, but the agreement of Mr. Stone to release Mr. Barnes from his personal liability, and that, as no personal decree is taken against him, he cannot complain. It is true that no personal decree is taken against Mr. Barnes, but if the receiver fails to pay these notes in full, and the holders of them may present a claim against Mr. Barnes for any deficiency, it is evident that Mr. Barnes has not been relieved of his personal liability. The receiver seeks to have the benefit of his contract with Mr. Barnes. To entitle him to this, he should carry out his part of the agreement. *Galloway* v. *Holmes*, 1 Doug. (Mich.) 330; *Jewett* v. *Petit*, 4 Mich. 508 ; *Sloan* v. *Holcomb*, 29 Mich. 161; *Thompson* v. *Howard*, 31 Mich. 309; *Dunks* v. *Fuller*, 32 Mich. 242; *Walsh* v. *Sisson*, 49 Mich. 423 (13 N. W. 802); *Rowley* v. *Towsley*, 53 Mich. 329 (19 N. W. 20); *Button* v. *Trader*, 75 Mich. 295 (42 N. W. 834); *Gow* v. *Lumber Co.*, 109 Mich. 45 (66 N. W. 676). The decree should make some provision for the surrender and return of these notes to Mr. Barnes.

This disposes of all the questions we deem it necessary to discuss. Except as herein modified, the decree is affirmed.

The other Justices concurred.