WILL OF MENDEL: KUOLT, Commissioner of Banking, Appellant, vs. KAUFER and others, imp., Respondents.

*October 3—October 24, 1916.*

*Trusts: Creation by will: Construction: Intention of creator: Investment of trust fund: "First class interest-bearing real-estate mortgage securities:" Diversion of fund: Remedies: Election.*

1. A trust must be executed according to the plan of its creator, and the language thereof, if not perfectly plain, must be so construed, if practicable, as to carry out the creator's intent as evidenced by all the circumstances characterizing the trust.
2. Where a will created a trust fund and directed its investment in "first class interest-bearing real-estate mortgage securities," the testator's intention was to confine the investments to mortgages wholly owned by the trustees and held by them for the sole benefit of the trust fund; and it was a violation of the trust to invest any part of the fund in mere participating certificates or bonds entitling the trustees to share with others in the mortgage security.
3. For such a violation of the trust, claim may be made and a recovery had against the offending trustee for the amount wrongfully diverted from the trust fund, and the successor of such trustee may proceed upon the theory that the securities so wrongfully taken are the property of the trustee who took them but are subject to an equitable lien in favor of the trust fund to secure, so far as they will, his liability for the diversion. Such proceeding does not involve inconsistent remedies between which an election need be made.

APPEAL from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed.*

Action to charge a trustee with money alleged to have been loaned in violation of the trust.

The trust was created by the will of Jacob Mendel, deceased. It was for the benefit of his widow and others. The fund which came to the possession of the trustee was about $70,000. The power in respect thereto, so far as relates to this action, was thus stated in the will: "I direct my executors and trustees to convert, as early as practicable, all my

property into first class interest-bearing real-estate mortgage securities and keep the same so invested." A Milwaukee, Wisconsin, institution under the name of Citizens Trust Company, for a time, and then Citizens Savings and Trust Company, and the widow, *Mary Mendel,* were the trustees for several years prior to October, 1913, during which time the loans out of the trust fund which are involved in the action were made. The Trust Company did all the business. At the end of such time it resigned and *Jacob Kaufer* was duly substituted. In a contest in the county court of Milwaukee county, as to whether the trust had been violated in respect to several loans which had been made, the decision was in the affirmative as to $21,568.79. The contest arose in the settlement of the Trust Company's account after it resigned. On appeal to the circuit court, objections were withdrawn leaving contested loans, aggregating $10,500, for which, with interest, judgment went against the Trust Company. About the time it resigned, it was discovered to be insolvent and the commissioner of banking took possession of its business and affairs, under sec. 2022, Stats. He was made a party to the action and appealed from the judgment.

In the circuit court these were the matters forming the subjects of controversy: A $6,500 investment in bonds of the Zoehrlaut Leather Company, an investment in a participating certificate of $1,000 in a mortgage indebtedness of the Hamilton Realty Company, and an investment of $3,000 in the bonds of the Clark Realty Company. It was conceded that the investment in the bonds of the Clark Realty Company was in violation of the trust because the security, in part, was on leasehold property.

The investment in the Herman Zoehrlaut Leather Company indebtedness was in first-mortgage bonds of such company, out of an issue of $250,000 of such bonds, dated February 5, 1905, payable in ten years, and bearing interest at the rate of five per cent. per annum, payable semi-annually.

The mortgage was in the form of a trust deed to the Trust Company of the real estate and buildings, including machinery of the mortgagor and its after-acquired real estate and machinery. Such property consisted of a tannery plant. The bonds, in form, acknowledged an indebtedness to the Trust Company and were payable to bearer. The trust deed contained ordinary provisions for the protection of bondholders. The property was situated in Milwaukee, Wisconsin, and was used for the purposes of the mortgagor from the date of the trust deed until the mortgagor became bankrupt in 1913. It then defaulted in payment of interest and, in due course thereafter, judgment of foreclosure of the trust mortgage was rendered, the indebtedness being fixed at $278,139.48. At the time of the judgment appealed from, whether there would be a deficiency had not been determined.

There was evidence produced by the contestants tending to prove that the value of the land and buildings attached thereto at the date of the trust deed was not more than $175,000. Evidence to the contrary tended to place the value at such time at around $266,000. There was further evidence tending to prove that the value of the lands and building at the time the investment was made was much less than the face of the bonds, but with the fixtures it was largely in excess of it; that the limit of well secured indebtedness, in case of such property, is fifty per cent. of the value of the land and twenty-five per cent. of the value of the building, with no allowance for machinery.

The character of the Hamilton Realty Company loan was this: The mortgage ran to the Citizens Trust Company. One of two persons, who were owners of, practically, the stock of the Trust Company and the stock of the Realty Company, acquired the property by purchase at a foreclosure sale, transferred it to the Realty Company and caused a $4,000 note to be made to the Trust Company, secured by a mortgage to it of such property. The Trust Company then made a paper

certifying that the Mendel estate had a $1,000 interest in such note and mortgage and invested $1,000 of the trust fund therein. The remaining amount of the note and mortgage was likewise disposed of by several like certificates sold to various persons. There was evidence tending to prove that the value of the property was around $6,000, of which $4,500 was represented by the buildings. Judgment of foreclosure of the mortgage was rendered July 6, 1915, but when the judgment in this action was rendered, whether there would be a deficiency had not been determined.

The Trust Company, at the time of the pendency of the action in circuit court, had on deposit with the state treasurer, according to law, $100,000 in securities for the protection of its patrons. In the winding-up proceedings, the trustees of the particular fund filed a claim to recover the loss accruing from investments made by the Trust Company in violation of the trust, it having been determined that the action should be regarded as a proceeding under sec. 2022, Stats., to determine the liability of the Trust Company chargeable to its securities deposited with the state treasurer. There were findings in harmony with the foregoing and particularly to this effect:

(1) Each of the investments was made by the Citizens Trust Company and, as to description and character, is in violation of the trust. (2) The trustees hold the securities under the trust created by the Mendel will and the authority of the court having charge of administering the trust, without prejudice to their right to reject any or all of them, or to enforce them for the purpose of saving the trust fund from depletion, and without ratification of the investments, or prejudice to such liability as might exist against the Trust Company to take back such securities and account for the same and any loss by reason of the violations of the trust. That situation has not been changed by any act or acts of the trustees. (3) *Albert E. Kuolt,* as commissioner of banking, since he

took charge of the insolvent Trust Company, October 2, 1913, has been possessed of its assets. It is without means to make good the loss to the Mendel trust growing out of its violations of duty except so far as the same may be realized by the trustees out of the securities deposited with the state treasurer according to law. A claim for the improperly used fund was seasonably filed in the settlement proceedings of the insolvent corporation, which claim was rejected and due notice thereof served on the trustees. Action upon such claim was seasonably commenced in the circuit court for Milwaukee county, having charge of the settlement proceedings, in that it has been determined by said court in such proceedings that the institution and prosecution of this proceeding should be deemed as a full compliance with the statute in that regard,—sec. 2022—5, Stats. (4) Proceedings on foreclosure of each of the securities involved in this action are pending. The actions as to the Hamilton Realty Company and Herman Zoehrlaut Leather Company have proceeded to judgment and that as to the Clark Realty Company is about to so proceed. The amount that may be realized in such actions for the improperly taken securities will be known in the course of about one year. (5) The improper investments were made as follows: (a) $4,500 May 10, 1906, in the bonds of the Leather Company, and $2,000 likewise November 1, 1909; (b) $1,000 March 29, 1910, in the participating interest in the Hamilton Realty Company loan; (c) $1,000 July 8, 1909, in the bonds of the Clark Realty Company, and $2,000 December 30, 1910, in such bonds. (6) Such investments are wholly unpaid except interest at the rate of five per cent. per annum, November 1, 1913, on the Leather Company bonds; to May 1, 1914, on the Hamilton Realty Company certificate; and to May 1, 1913, on the Clark Realty Company bonds.

Upon such facts this was held: The Trust Company is chargeable with the principal of, and unpaid interest on, each of the investments. The commissioner of banking is a party

in interest. The Trust Company should be required to pay to the trustees the amount with which it is chargeable as stated and they are entitled to recover the same, accordingly, in the settlement of its account as a trustee of such fund, subject to allowance in the manner provided by law, as a claim in the settlement proceeding of such company under the administration of the banking commissioner. Upon payment thereof, the securities improperly taken should.be surrendered to such commissioner. Until such payment, such trustees are entitled to hold such securities, and enforce the same in any proper way on account of the liability of the Trust Company for the wrongfully diverted funds, without prejudice, as regards any claim of ratification of the diversions, or to the right of the trustees to enforce their claim against such company. Such securities are in the hands of such trustees, subject to a lien accordingly. The judgment should be interlocutory and provide for pendency of the cause until payment shall have been made of the liability, adjudged against the Trust Company, so far as practicable, out of such securities, and a report shall have been made accordingly, and the court shall have finally acted in respect thereto. Judgment should go in favor of the commissioner of banking for a recovery out of the assets of the Trust Company in his hands, his costs and disbursements as taxed according to law.

Judgment was rendered in harmony with the foregoing and as before indicated the commissioner of banking appealed therefrom.

For the appellant there was a brief by *Flanders, Bottum, Fawsett & Bottum,* and oral argument by *R. N. Van Doren.*

For the respondent *Kaufer* there was a brief by *Glicksman, Gold & Corrigan,* attorneys, and *George B. Luhman,* of counsel, and oral argument by *Nathan Glicksman.*

MARSHALL, J. As we understand the findings of the trial court, it was held that, irrespective of whether the character of the securities in which the trust funds were invested was

good, in that payment of principal and interest was amply secured, they were not of the class contemplated by the deceased by the language used in his will,—"I direct my executors and trustees to convert, as early as practicable, all my property and estate into first class interest-bearing real-estate mortgage securities and keep the same so invested." That is, the idea which the creator of the trust intended to, and did, express was that the investment should be made in real-estate mortgage securities, the mortgages in the entirety to be owned by the administrators of the trust for the beneficiaries.

It must be conceded, and is, as we understand it, that if the proper construction of the language of the trust does not include power to place trust funds in bonds secured, with a large issue of such evidences of indebtedness, by a trust deed, nor in a mere evidence of right by one to participate with others in an indebtedness secured by a real-estate mortgage, then the investments in question were wholly unwarranted.

We have reached the conclusion that the circuit court correctly construed the language of the trust. The creator of it meant more, by the words "first class interest-bearing real-estate mortgage securities" than that the securities should be good and of real estate character, in the broad sense of the term. He meant to confine the investments to the narrow class characterized by sole ownership of the entire mortgage indebtedness, so the securities might be enforced by the trustees, if necessary, without regard to any other party interest therein. "First class" was not thought by the creator, would permit his estate to be complicated with rights of any number of persons who might be interested, as creditors, in the mortgaged property. He intended to require mortgages, running to the trustees, or held by them for the sole benefit of the trust fund. Evidently, in his judgment, a mere participating certificate, entitling the trustees, as such, to share with many persons, in a mortgage indebtedness, or a bond entitling them to share with a large number of bondholders, located in

many places throughout the country, and, perhaps, in foreign countries, with many possible efficient difficulties to contend with, in case of necessity to enforce the security, would not answer to the call for first class mortgage securities to be the repository of the trust fund.

As suggested by counsel for respondent, how could trustees of a small trust fund protect the interests of their beneficiaries in case of a foreclosure of a mortgage given to secure $250,000 of indebtedness of which such trustees owned but about four per cent. of it? It would be, practically, an impossibility. That, of itself, would stamp such an investment as far from being "first class" from the viewpoint of such trustees. Again, how could trustees, holding a mere participating certificate, as in this case, protect their beneficiaries, in case of foreclosure of the security, without being required to contend with many difficulties which would preclude regarding the investment as first class for such a trust fund as the one in question?

There does not seem to be any need for prolonging the discussion. It seems very clear that the trial court properly construed the language of the trust. The case turns on what the creator of the trust intended and expressed. No principle of law is involved other than that a trust must be executed according to the plan of its creator, and that the language of the trust, if not perfectly plain, must be so construed, if practicable, as to carry out the creator's intent as evidenced by all the circumstances characterizing the trust. Authorities are unnecessary, for such principles are elementary.

Counsel for appellant contend that the judgment, affording respondents the benefit of the securities, so far as money can be realized therefrom, to restore the trust funds, is inconsistent with the judgment against the guilty trustee for the money improperly diverted,—that appellant cannot have the securities in question and have a judgment for a recovery of the

money invested therein, as well. The difficulty with that is that the judgment does not proceed upon the theory that the title to the securities is in the trustees, or that they are to have them; but rather upon the ground that the securities have been rejected, subject to an equitable lien thereon in favor of the trust fund. We do not perceive any difficulty in that.

This is not a case of following the trust fund into the property in which it has been improperly invested, and claiming such property, and, at the same time, claiming to recover the fund upon personal liability therefor, as in *Rowley v. Towsley,* 53 Mich. 329, 19 N. W. 20, and many other judicial and text-book authorities, cited to our attention. The trustees do not claim the securities. They claim that, in equity, they are entitled to hold them as property of the wrongdoer, charged with a lien to make good, so far as practicable, the damage caused by the wrong. There can be no doubt but what the *cestui que trust,* in such circumstances as exist here, may retain the property and thereby ratify the wrong, or reject it and claim damages for the wrongful investment therein, or claim such damages and charge such property, as belonging to the wrongdoer, with a lien for the damages suffered. We observe nothing to the contrary of this in anything cited to our attention, or anything we can discover. If an authority were found to the contrary, we should be inclined to reject it as wrong on principle.

In reference to the matter under discussion, the rule is thus stated in 2 Story, Eq. Jur. (13th ed.) sec. 1262: "The *cestui que trust* has an option to insist upon taking the property, or he may disclaim any title thereto and proceed upon any other remedies to which he is entitled either *in rem* or *in personam.* But he cannot insist upon opposite and repugnant rights."

So the test here is, Is the judgment for a recovery of damages for the diversion of the trust fund repugnant to the lien thereon as the property of the Trust Company to secure, so far as it will, the company's liability? It clearly does not

seem so.  In *Ferris v. Van Vechten,* 73 N. Y. 113, cited to our attention by counsel for respondent, it was distinctly held that, in the circumstances of this case, the property in which the trust funds was improperly invested may be sold as the property of the wrongdoer and the trustees held liable for the deficiency.  To the same effect are *Mann v. Benedict,* 47 App. Div. 173, 62 N. Y. Supp. 259; *Holmes v. Gilman,* 138 N. Y. 369, 34 N. E. 205; 39 Cyc. 552.

In the last citation it is stated as a general rule that the *cestui que trust* may elect to claim the property, or claim an equity therein, for a restoration of the diverted fund.

It will be seen that, in repairing a wrong of the sort under discussion, the sole test of whether there has been an efficient election between two or more remedies, is whether a repugnancy exists between one resorted to and another attempted to be used.  There is no repugnancy between different remedies, all of which are grounded upon the theory that the title to the property involved is in the defendant.  One may easily go astray by failing to appreciate such test and the distinction between claiming the property, and the fund improperly vested therein, and claiming restoration of the fund as damages for the wrong and the right to security therefor upon the property, disclaiming title thereto, as owner.  In the latter circumstances, the law affords all the remedies within the competency of the court to entertain which may be necessary to repair the wrong.  There may be several actions and several forms of relief, but there can be but one satisfaction. *Russell v. McCall,* 141 N. Y. 437, 36 N. E. 498.  The real subject of litigation here is the damage.  The recovery sought was not the money incorporated into the securities, but the damage for breach of trust.  Germane thereto was the claim to a lien upon the property improperly taken by the Trust Company, to secure compensation for such damage.

By misconceiving the attitude of respondent as claiming or dealing with the securities as owner, and seeking to recover the fund improperly invested therein, repugnancy between

the remedial rights asserted here would be quite apparent, and authorities, without number, could be cited to condemn it.    Counsel for appellant found no difficulty in that regard, but the authorities relied on are beside the real case with which we have to deal.

It follows from the views expressed that no suggestion of counsel for appellant, other than those we have treated, need be discussed.    The judgment is right and must be affirmed.

 *By the Court.*—The judgment is affirmed.

ESCHWEILER, J., took no part.