**MURPHY–BOLANZ LAND & LOAN CO. et al. v. McKIBBEN. (No. 278–3514.)** *

(Commission of Appeals of Texas, Section A. Jan. 11, 1922.)

**1. Trusts ☞359(1) — Suit held to be one against trustees for improper investment of funds.**

A suit alleging improper investment of funds by the defendants as trustees of money confided to them, where plaintiff also alleged that she was induced by the fraud and deceit of defendants to consent to invest the fund in the property purchased and that they were disloyal to their trust in representing the seller, whose interests were antagonistic to hers, which latter allegations pertain only to authorization or consent to the investment, *held* not a suit for damages based on fraud of an agent inducing a purchase by the principal but a suit against trustees for improper investment of a trust fund.

**2. Trusts ☞217(3)—Trustee must not speculate with trust fund.**

There must be no speculation upon the part of a trustee in dealing with the trust fund, and the law does not give him the freedom of choice in making investments which may be and often is exercised by prudent business men in their own affairs.

**3. Trusts ☞218(1)—Trustee commits breach of trust by investing funds in incumbered property and is liable for loss.**

It is a breach of trust for the trustee to invest the trust fund in incumbered property which subjects it to probable loss, and, if he does so, he becomes liable for any such loss sustained.

**4. Trusts ☞231(1)—Trustee's acting for and receiving broker's commission from adverse party without beneficiary's knowledge in investing trust funds is a breach of trust.**

In dealing with a trust fund, the trustee's own personal interests and opportunities for gain must be cast completely aside, absolute and scrupulous good faith being the very essence of his obligation, and he must act for the beneficiaries and not antagonize their interests, and in investing the trust fund it is a breach of trust for the trustee to represent the adverse parties and receive a broker's commission therefor without the knowledge and consent of the beneficiary.

**5. Trusts ☞231(1)—Trustee investing trust funds in incumbered property and taking commission from vendor and fraudulently obtaining beneficiary's consent held guilty of breach of trust.**

Where a trustee invested trust funds in incumbered property paying one-fifth of the purchase price, knowing that the beneficiary would probably not be able to meet the payments where not authorized to do so by the independent judgment of the beneficiary and where the trustee received a broker's commission from the party selling the property, *held*, that the transaction was a species of fraud and a part of the general scheme constituting a breach of trust by the trustee who obtained the beneficiary's consent by fraudulent representations.

**6. Trusts ☞218(1)—Beneficiary may hold trustee personally responsible for entire wrongful investment or retain property and recover difference between contract and market value, of land bought.**

Where a trustee improperly invested trust funds in incumbered property, receiving a broker's commission from the vendor without the beneficiary's knowledge and consent, the beneficiary could elect whether to hold the unfaithful trustee personally responsible for breach of his trust or to claim the land, the fruits of the misappropriation, and, in the event of an excessive purchase price, hold the trustee for the difference between the contract price and the reasonable market value or cause the land to be sold as the property of the wrongdoer and look to him for the deficiency.

**7. Trusts ☞237—Wrongful investment, not ratified by beneficiary's precautionary methods to protect investment, not a ratification nor election to keep the property and sue trustee for difference.**

Where a trustee committed a breach of trust by investing the funds in incumbered property and received a broker's commission from the vendor, where beneficiary did not elect to claim the land and sue for the difference, but sued for breach of trust, her payment of interest on the deferred payments to prevent foreclosure and listing of the property with various real estate brokers while relying upon the trustees to fulfill their promise to sell before foreclosure were merely precautionary methods to protect the imperiled fund which did not amount to ratification of the purchase or election to keep the land and sue for the difference.

**8. Trusts ☞237—In beneficiary's suit for breach of trust, her suing trustee for broker's commission held not a ratification of the purchase.**

In a beneficiary's action against a trustee for breach of trust by investing the funds in incumbered property and receiving a broker's commission from the vendors, *held*, that beneficiary's suing the trustee to recover such broker's commission was merely invoking of the doctrine that the trustee should not make incidental profits for himself in handling the trust fund and did not amount to a ratification of the purchase.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied March 1, 1922.

**9. Trusts ⬩361—In an action for breach of trust, held that there were no profits to be returned as condition precedent to suit by beneficiary.**

In a beneficiary's action for trustee's breach of trust by investing funds in incumbered property and receiving a broker's commission from the vendors, a contention being that the beneficiary could not recover without first returning amounts received from the investment including rentals, where part of these were spent in repair of the property and the beneficiary had paid on the property an amount far in excess of that received, *held*, that there were no profits, and that the beneficiary was not put to an election between profits and interest upon the amount invested.

**10. Trusts ⬩237—Beneficiary may elect to take interest on part of trust fund and profits on another part in case of trustee's breach, where the investments are divisible.**

The general rule that a beneficiary must elect to take the original trust fund with legal interest thereon or take the fund as invested, together with all the profits realized thereon, and cannot take profits for one period and interest for another, in case of trustee's breach of trust, is subject to the exception that, where trustee's improper investments are divisible, beneficiaries are not limited to rejection of all or none, but may accept such investments as they choose and reject others.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Suit by Mrs. Eugenia Lomax McKibben against the Murphy-Bolanz Land & Loan Company and another. Judgment for plaintiff, and the defendants appealed to the Court of Civil Appeals, which confirmed the judgment (221 S. W. 650), and the defendants bring error. Judgments of the district court and of the Court of Civil Appeals affirmed.

Read, Lowrance & Bates, of Dallas, for plaintiffs in error.

Albert Walker and O. F. Wencker, both of Dallas, for defendant in error.

SPENCER, P. J. This suit was instituted by Mrs. Eugenia McKibben, defendant in error, to recover of the Murphy-Bolanz Land & Loan Company, a corporation, and J. A. Power, plaintiffs in error, for the alleged improper investment and consequent loss of the sum of $2,400, alleged trust fund placed in the latter's hands.

Defendant in error alleged in substance that in December, 1910, in virtue of an agreement had with plaintiffs in error, she deposited between $5,000 and $6,000 with them to be administered as a trust fund by them; that they were to invest the money in property under a guaranty that it would make her considerable money, and with the assurance that none of it would be lost; that they invested the money from time to time, and on

or about June 13, 1913, with the intention of defrauding her, they purchased and had conveyed to her a lot or tract of land located on Commerce street in the city of Dallas, which is more fully described in the pleadings, the consideration for which was $12,500, $2,400 of which was paid out of the trust fund and the balance evidenced by note secured by deed of trust upon the land.

The fraud charged by her was: That knowing she had no other money or property with which to meet the deferred payments, they represented to her that if she would permit them to invest the $2,400, they would assure her that she would lose no money by the investment, and that they would resell it before any of the deferred payments became due for more than she had given for it; that relying upon these representations and statements she did not withhold her consent to make the investment; that in violation of their trust agreement and without her knowledge or consent they represented the grantors, the parties adversely interested in the transaction, and received a commission of $250 from them for their services; and that in further violation of their agreement they failed and refused to resell the lot, but by and through their agent, Dunlap, foreclosed the deed of trust against it causing her to lose the amount invested together with legal interest thereon, as well as $800 interest paid by her on the original notes, the payment of which was secured by the property conveyed. She prayed for judgment for the three sums mentioned, with interest.

Plaintiffs in error, in addition to the general demurrer and general denial, specially denied that defendant in error deposited with them or either of them the money claimed by her to have been deposited, that there was ever any trust agreement, but alleged that the property was purchased by defendant in error in the exercise of her own judgment, uninfluenced by them, after a full investigation by her and after having been informed that they were representing the owners of the lot in the transaction; that they agreed that if she purchased the property they would resell it for her, or make her money on the investment. They further alleged that after the purchase they secured a buyer, ready, able and willing to purchase the property at a profit to her, but that she refused to sell and thereby reaffirmed and ratified the purchase.

The jury, in response to special issues, found, among other things: That defendant in error deposited $5,000 or $6,000 with plaintiffs in error under an agreement that the latter would invest it, so that it would make her a great deal of money; (2) that she authorized plaintiffs in error to make in-

⬩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

vestments without her consent; (3) that plaintiffs in error were the agents of defendant in error in the purchase of the property from Youngblood, and also trustees for her in that transaction; (4) that she did not know at the time of the transaction that they were representing Rose and Day, grantors, and would receive a commission from them for their services; and (5) that the reasonable market value of the property at the date of purchase for defendant in error was $11,500.

Upon these findings judgment was rendered in favor of defendant in error for the sum of $2,400 with interest, and upon appeal the judgment was affirmed. 221 S. W. 650.

It is insisted by plaintiffs in error that: (1) This is a suit for damages based upon fraud, misconduct, or disloyalty of agents, and that the proper measure of damages would be the difference, if any, between the contract price of the lot and the market value thereon at the time of the transaction, and not the total amount lost by the investment; (2) before she was entitled to recover the amount lost by the investment, it was her duty to rescind or offer to rescind the contract and to return to plaintiffs in error the profit of $750 made upon an investment of the trust fund in Elm street property in 1910; and (3) in claiming the benefit of the acts of her trustees by suing them for the $250 commission which they received from the grantors, she thereby ratified their act of purchase and cannot, therefore, recover for the loss of the investment.

[1] The fallacy of the first proposition consists in the assumption that this is a suit for damages based upon the fraud of an agent inducing a purchase by his principal. They misconceive the cause of action asserted by the defendant in error. The allegations of the petition are more far-reaching in their scope than a suit for the agent's fraud in inducing a sale to his principal. It is a suit for the improper investment by the trustees of a fund confided to them under an agreement to invest it without loss to the beneficiary, and in which it is averred that the fund so invested was lost because of the bad faith of the trustees. It is true that there are allegations by defendant in error to the effect that she was induced by the fraud or deceit of plaintiffs in error to consent to invest the fund in the property purchased, and that they were disloyal to their trust in representing the seller, whose interests were antagonistic to hers; but these allegations pertain only to one phase of the case—that of authorization or consent by defendant in error to the investment.

[2] There must be no speculation upon the part of the trustee in dealing with the trust fund. The law does not give to him the same freedom of choice in making investments which may be and often is exercised by prudent business men in the conduct of their own affairs. Pomeroy's Eq. Juris. (4th Ed.) par. 1074, p. 2459.

[3] In the application of these principles it has been generally held that it is a breach of trust for the trustee to invest the fund in incumbered property, which subjects it to probable loss, and if he does so invest it, he becomes liable for any loss that may be sustained because of the improper investment. Pomeroy's Eq. Juris. (4th Ed.) par. 1074, p. 2463.

[4] In dealing with the trust fund, the trustee's own personal interests and opportunities for gain must be cast completely aside. Absolute and scrupulous good faith is the very essence of his obligation. In administering the fund, he must act for the beneficiaries and not for himself in antagonism to their interests. 39 Cyc. 296. It is, of course, a breach of trust for the trustee in making an investment of the trust fund in real estate to represent the adverse parties to the transaction and to receive a commission therefor, without the knowledge and consent of the beneficiary. Magruder v. Drury, 235 U. S. 106, 35 Sup. Ct. 77, 59 L. Ed. 151.

[5] The investment of trust funds in property incumbered as this was would be inexcusable unless the defendant in error in the exercise of her independent judgment, uninfluenced by the representations of plaintiffs in error, authorized it, or, with full knowledge of all the facts and apprised of her legal rights, ratified or acquiesced in the unauthorized investment.

The money invested represented only one fifth of the contract or purchase price. Plaintiffs in error knew that defendant in error did not have, and in all probability would not have, sufficient funds to take care of the deferred payments, and that a failure to meet these payments when due would subject the lien retained to secure them to foreclosure. The purchase was, under such circumstances, the highest form of speculation and extremely hazardous. The only contingency that would likely arise to save the fund from certain destruction, or diminution by foreclosure, would be a resale at the contract or advance price. The reason for the investment seems to have been an expected advance in property values in the vicinity where the property purchased was situated. This expectation was based, however, upon mere rumors that factories were to be erected and maintained there. There is no evidence of any advance after the purchase; but the shock of the advance is registered in the deed from the grantors to defendant in error—the proof showing that the property had been sold a day or two previ-

ously to the grantors for $11,500, and the jury found that this was its reasonable market value at the date of sale.

Did defendant in error, uninfluenced by the representations made to her by plaintiffs in error, consent to the investment? She testified that she depended upon and confided in Power to make investments for her. She was inexperienced in business matters and upon receiving by inheritance a sum of money deposited it as a trust fund, so the jury found, with plaintiffs in error Murphy-Bolanz Land & Loan Company, in which Power was an officer. Power was related to her by marriage. She had confidence in his business ability and integrity, and upon his assurance that she would not suffer any loss, and that a resale would be made before the notes becames due, she consented, without inspecting the property, to the investment. By this assurance, her fears were quieted and her consent obtained. Plaintiffs in error profited by getting her consent. It is now sought to make this consent thus obtained a barrier to a recovery. It cannot and ought not to avail them. Taken in connection with the act of the trustees in representing interests antagonistic to hers, without her knowledge, the assurance inducing the consent is a species of fraud and a part of the general scheme—a link in the chain, so to speak—constituting a breach of the trust. Having been induced by the fraudulent representations to consent to the investment, the case should be treated as though no consent was given.

[6] Plaintiffs in error insist that the rule for the measure of damages announced in George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456, should govern this case. That is, the difference, if any, between the contract or purchase price of the land and the reasonable market value thereof at the date of trial. The rule in George v. Hesse cannot be questioned. It ought not to be questioned. But this case does not come within the rule there announced. That was a suit by one of the principals to the exchange of property to recover from the other for the fraudulent representations by which he had been induced to enter into the contract to his loss. He sought to recover the difference between the value of the property received and its value if the representations, that there was a gusher upon it, had been true. The Supreme Court held that the plaintiff in that case was not entitled to recover for the expected but unrealized value, but that the measure of his damage was what he had lost in the transaction. The reason underlying the rule in that case is that the plaintiff had the right of rescission, based upon fraud, and had he exercised that right he would have been placed

in statu quo, and would have recovered nothing for his failure to get the property as represented. He would have recovered the property and there would have been no loss, except the expense of litigation. Had defendant in error elected to retain the land, the rule announced would apply. But this case is unlike that one in this important particular: That is a suit between the two principal actors in the transaction; this, a suit between the trustee and the cestui que trust. The latter is because of this fiduciary relation entitled to a remedy not present nor considered in that case. The plaintiff there and the cestui que trust here are both entitled to the amount actually lost. Because defendant in error did not rescind the contract upon the ground of plaintiffs in error's dual agency, they seek to confine her relief to suing for the difference between the contract price and the reasonable market value of the property at the date of sale, to the exclusion of the other remedies afforded her by law.

Upon learning of the disloyalty of trustees, defendant in error could, under the well-established rule that where an agent, without the full knowledge and consent of his principal, represents the adverse party in a transaction, his contracts relating thereto are voidable at the option of the principal (2 Corpus Juris, 838, par. 520), have elected to rescind the contract, and, had she done so, such election would have bound her. But she was not compelled, in order to protect her unfaithful servant, to resort to an action for rescission predicated upon a wrong committed by them, to the exclusion of the other remedies which the law afforded her. She had the right of election as to which remedy she would pursue.

In the event a trustee has made an improper investment of the funds confided to his care, the cestui que trust may elect whether (1) to hold the unfaithful trustee personally responsible, or (2) to claim the land, the fruits of the misappropriation, and in the event of an excessive purchase price hold the trustee for the difference between the contract price and the reasonable market value, or (3) to cause the land to be sold as the property of the wrongdoer and look to him for the deficiency. Ferris v. Van Vechten, 73 N. Y. 113; In re Mendel's Will, 164 Wis. 136, 159 N. W. 806.

[7] The record does not show, as a matter of law, that defendant in error at any time, before or after she learned of the dual representation by plaintiffs in error, ratified or acquiesced in the investment; nor that she elected to claim the land and sue for the difference. It is true that she paid interest upon the deferred payments to prevent a foreclosure and that she listed the property with various real estate brokers for sale, but

236 S.W.—6

in so doing was relying upon them to fulfill their promise to sell. These acts were merely precautionary methods upon her part to protect the imperiled fund, but which do not in any sense amount to a ratification of the purchase, or an election of remedies by her. Under the unrepudiated promise, subsequently repeated to her, she had a right to deal with the property as she did without being charged with ratifying their act of purchase.

[8] Neither does her act of suing the trustees for the commission of $250, received from the parties adversely interested in the transaction, amount to a ratification of the purchase, as contended by plaintiffs in error. In seeking to recover these commissions, defendant in error was, no doubt, attempting to invoke the doctrine that it is imperative upon the trustee, in his dealings with the trust property, not to make any incidental profits for himself in its management, and not to acquire any pecuniary gain from his fiduciary relation, and that the beneficiary is entitled to claim all advantages actually gained. Pomeroy's Eq. Juris. (4th Ed.) par. 1075, p. 2468.

This item is not a "profit" in the strict sense of that term. It is more in the nature of an incidental gain. But if it be classed as profits derived from the management of the trust estate, the action of defendant in error in suing for it would not amount to a ratification of the purchase. At most, it would be an election upon her part to take the profits from the fund instead of the interest. As interest was awarded and a recovery of this item denied her, further discussion is unnecessary.

The authorities cited (Robb v. Voss, 155 U. S. 13, 15 Sup. Ct. 4, 39 L. Ed. 52; Bodine v. Berg, 82 N. J. Law, 662, 82 Atl. 901, 40 L. R. A. [N. S.] 65 Ann. Cas. 1913D, 721; Dolvin v. American Harrow Co., 125 Ga. 699, 54 S. E. 706, 28 L. R. A. [N. S.] 799; and McLeod v. De Spain, 49 Or. 536, 90 Pac. 492, 92 Pac. 1088, 19 L. R. A. [N. S.] 282, 124 Am. St. Rep. 1066), and relied upon by plaintiffs in error upon the question of ratification are not in point. In none of those cases is the cause of action between persons occupying the relation of principal and agent; but are cases between the principal and third persons, and in which the principal repudiated the act of the agent but claimed the beneficial result of the general agency. Those cases hold in effect that the principal cannot take advantage of the contract made in his behalf without ratifying the act of his agent and becoming bound thereby, and that a suit based upon the agent's act is a ratification of his act. This rule is, of course, not questioned; but it is inapplicable here.

[9] It is also contended that defendant in error is not entitled to recover unless she first returns the amounts which the investment of $2,400 and the investment on the Elm street property netted her. Defendant in error's testimony with reference to the Commerce street property is that there was a two-room house on it which rented for not to exceed $10 per month. She also testified that plaintiffs in error collected this rent and used a portion of it in repairing the windows and roof of the house. On the other hand, she testified that in order to prevent a foreclosure she paid $500 interest upon the unpaid purchase-money notes and at another time placed her diamond rings as security for interest due but unpaid. It is apparent from these facts that the venture proved anything but profitable. As there were no profits, she was not put to an election between profits and interest upon the amount invested.

[10] Neither was she required to return to them the $750 which the investment in the Elm street property netted her. We are not unmindful of the general rule that a cestui que trust must elect to take the original fund with legal interest thereon, or take the fund as invested together with all the profits realized thereon, and that he cannot take the profits for one period and interest for another. 39 Cyc. 414 (K); Baker v. Disbrow, 18 Hun. (N. Y.) 29. This rule is subject, however, to the exception that in case of improper investments which are divisible cestui que trustent are not limited to rejection of all or none of them but may accept such as they choose and reject others. King v. Talbot, 40 N. Y. 76. The exception to the rule governs this case. The two investments are clearly and easily divisible. Defendant in error does not seek to recover interest on the entire fund from the date of the original investment in the Elm street property, but asks for interest only on the sum of $2,400 from the date of its improper investment. It would be inequitable and unjust to compel her to surrender the $750 unless she be permitted to recover interest upon the entire amount from the date of the original investment.

Believing that under the facts found the trial court entered the correct judgment, we recommend that the judgments of the district court and of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.